May it please the court. My name is Saad Ahmed and I represent the petitioner in this case. The petitioner, a native and citizen of Mexico, seeks a review of the board's final order of removal in which the board denied his applications for asylum with holding of removal and relief under the Convention Against Torture. The petitioner is a landowner in Mexico who was kidnapped and brutally tortured by members of a ruthless drug cartel called the Zetas. The police in Mexico not only failed to protect him, the police actually took part in his kidnapping and facilitated his kidnapping. What's the evidence that they actually participated in it? Your Honor, my client, the petitioner, testified that he was abducted from his house by the drug cartels. The police facilitated and provided direction to the drug cartel members and the judge found him to be credible. If the judge finds my client to be credible, then she must also, the record compels the conclusion that he was kidnapped by or with the acquiescence of the police. If Your Honor like, I could show in the record where the petitioner actually told the judge as well as to the immigration officers who took part at the credible fear interview stage that this is what happened. Well, I'm not clear that there was evidence that the Mexican government acquiesced in this. I know that there was testimony that the Mexican police signaled to the kidnappers that the roads were clear ahead. But is there any evidence that the officers knew that your client was being transported against his will? And if the answer is yes, give me the site, please. Well, Your Honor. Is the answer yes or no or I don't know? Your Honor, I don't know. Okay. I don't know. However, why were the police giving the directions to the kidnappers that it is clear for them to go? Why would the police be involved in any way? And I think that what our expert on country conditions, Dr. Avila, who testified in support of this claim, also said that the police in Mexico is extremely corrupt. It routinely helps facilitate these kind of kidnappings. So I believe that based on the evidence in the record, based on what my client testified, I think there's a reasonable inference that the police not only helped facilitate in his kidnapping, but also in the future would accuse to his torture. For the Cat claim, it's not just what happened to him in the past. There's no presumption of future persecution or, excuse me, torture. It is also what could happen to him. And I think in this case, the record not only supports but compels that conclusion, that the petitioner would be tortured with the acquiescence of the police. The immigration case. First you say it's a reasonable inference, and now you're telling me that the record compels. The record compels the conclusion that in the future he would be tortured with the acquiescence of the police. Based on the country condition reports, based on also the testimony of the expert. And I think that in this case, the immigration judge completely failed to consider all evidence, even though the Cat regulations require that all evidence relevant to the possibility of torture must be taken into account. Don't we owe deference to the BIA social visibility determination? I mean, they are – this is fact-finding involved here. So if we do, what's your response to that? Thank you, Your Honor. Your Honor, now you're coming back to the asylum claim. Yes, this Court in Enrique Rivas and Bank recently upheld the validity of social visibility and the particularity requirements. We agree. In this case, the social visibility requirement was applied incorrectly because the BIA used a case, Valesco-Cervantes v. Holder, which was reversed, or the reasoning of that case was reversed in Enrique Rivas, as I pointed out in my 28-year letter. The Court said that its prior case law that required unity of origin, unity of interest, unity of political affiliation, that is not a benchmark for particularity or social visibility. And, yes, we owe deference to the Board's interpretation of the term social group, but in this case, the Board did not apply that requirement according to this Court's precedent in Enrique Rivas. So what do we do about that? Your Honor, what we should do, I think in this case, as far as the asylum claim is concerned, in light of Enrique Rivas, I think the case should be remanded to the Board to decide in the first instance, because the Board unfortunately applied Valesco-Cervantes, a case by this Court, which it subsequently overturned or reversed, or the reasoning in that case was reversed. So I think in that situation, but the CAD claim, Your Honor, we believe the record not only supports it, but compels the conclusion that my client was tortured with the acquiescence of the government of Mexico. Your Honor, I'd like to point out that particularity and social visibility requirements that this Court has upheld recently in the Ambank panel are valid requirements. But in this case, my client's — excuse me, my client satisfies those requirements because, first of all, landowners in Mexico are a very well-defined group. And also, as Judge Bea pointed out in the majority opinion in Enrique Rivas, it's not just the perception of society in general that may be important in determining whether a group is socially visible. It's the perception of the persecutors, the drug dealers here. The drug dealers in this case obviously perceived my client to be a member of a social group because they came to his residence to kidnap him. He was not a victim of random violence. He was not kidnapped on the street. If that were the case, then there was an argument to be made that, well, maybe he was a victim of random violence. Society in Mexico, especially where 40 percent of the population lives in poverty, recognizes landowners as a social group. The cartels recognize landowners as a social group and people who they can extort, I mean, target and extort money from. And Your Honor, the particularity requirement is also satisfied under this Court's jurisprudence, as I explained earlier, that in matter of Acosta, the Court said that landowners are indeed a social group or can be a social group. And in this case, is it your position that the particular social group would be defined as wealthy landowners? Your Honor, I would say wealthy landowners who were targeted. Yes, that would be my position. What would be your position on landowners in general? Excuse me, Your Honor? What would be your position on landowners in general? I would say my position would be the same. In light of Enrique Rivas, I think my position would be that even landowners in general may satisfy the particularity requirement in Mexico. It may not be in maybe some other country, but in Mexico, because in Mexico, based on disparity of income, disparity of, you know, how society looks at landowners, I think landowners in general would satisfy this requirement. If someone were stock-rich and land-poor, would that be a particular social group? It may be in a society, but I'm not sure if it would qualify in Mexico to be, because wealth itself, it's too amorphous, as the Board indicated. It's too amorphous. It's too subjective. So you agree that wealth alone is not enough? That's correct. Wealth alone would not be enough. Landowner alone would be enough? I would say in this case it would be enough, as Judge Bea pointed out in Enrique Rivas, that social groups... All landowners? In a society in question, you have to... All landowners? I would say all landowners would be, because they have... So his parents would also be a group. And his parents, if I read the record correctly, were not harmed or threatened or intimidated? Your Honor, his parents are deceased. His parents are deceased. And... At the time? At the time he was deceased. In fact, his parents died in 1997, and then he acquired the land. And... Before then, were his parents a target? Before, there was no drug violence in Mexico. I mean, the violence that we see now, these terrible, ruthless kidnappings and, you know, this rampant drug war, it did not exist. But I believe that, yes, if it did exist at that time, his parents would have been targeted as well. I think my time is winding down. I'd like to take 30 seconds for rebuttal, if I may. I will give you four minutes. Thank you. Good morning, Your Honor. Good morning, Your Honors, and may it please the Court. Emerald Zadie for the Attorney General. Your Honor, this petition challenges the agency's denial of asylum, withholding of removal, and protection under the Torture Convention. Now, substantial evidence supports the agency's decision for two reasons. First, petitioner's proposed group, landowners in Mexico subject to violence by drug cartels, lacks both the required particularity and social visibility to constitute a controversial group. What about just landowners in general? Doesn't our case and doesn't the BIA's cases make it almost a model of what's the social group? Respectfully, Your Honor, no, I don't think that they hold it out as a model. I think landowners in general, which, of course, is not the issue in this case by itself, but landowners in general. Well, if you're in the landowner group, wouldn't you, if you're a wealthy landowner, wouldn't you fall within the landowner group? Your Honors, the group proposed here and the group that the Board analyzed was landowners targeted by drug cartels. And you can't take a characteristic and isolate it and determine in a vacuum that landowners by itself. If the group proposed here was landowners targeted by drug cartels, then whether or not landowners by themselves satisfies particularity or social visibility. If you're in a group of landowners whose name begins with Z, aren't you in the group of landowners? You would be in a group of landowners, yes. So what's the difference if you're wealthy or poor if the group is landowners? Well, Your Honors, for the social visibility analysis or for the particularity analysis? For any analysis, according to both the BIA and according to our court. Well, Your Honor, the contention is that if you read those two requirements or characteristics together as you must, then it would fail social visibility because that is. Well, why must you? Pardon me? Why must you? If you're in a group that's covered and you happen to be wealthy or you happen to be poor or whatever you are, if landowners is a recognizable social group, what difference does it make whether you're wealthy or not? Well, Your Honors, again, it's because you have to be very careful to read both characteristics together. Otherwise, otherwise entirely. Why? Your Honors, that's how the courts and the board have interpreted it. Otherwise, if you take matter of SEG or Ramos versus Lopez or even Enriquez Rivas, all of those decisions would have come out differently. In those cases, you've got youth targeted by MS-13 or other gangs in El Salvador. Well, surely youth, like landowners, would be recognizable. Somebody who's young would be recognizable. Oh, I don't know that somebody who's young would be a group that the BIA recognizes. I believe in some of those cases, Your Honors, they actually specifically define themselves as teenagers or 13-year-olds or categories that would be recognizable by themselves. And the BIA said that youth is a targeted, maybe a targeted group? When read together. Yeah, youth would something else could be. But landowners have been identified as a socially recognizable group. Landowners, Your Honors, might be socially recognizable. But in this case, landowners would fail, we believe, the particularity requirement. And that's exactly what this court said. In what way? In the fact that they're not sufficiently discreet. They're not sufficiently narrow. And that's what the court said in Ochoa v. Gonzales. Have they ever said that about landowners? They said it about business owners in Ochoa v. Gonzales. Okay, business owners, fine. Landowners, right or wrong? I'm not suggesting that the BIA is always right. But I'm saying what they have done. Right. Both they and we have said that landowners is a recognizable group. Your Honors, the board has held that. But, again, that characteristic cannot be read in isolation. And here, when you combine it with. The board has identified it as a recognizable group. Your Honors, the board has also said that when you're interpreting a proposed group, you cannot simply isolate one characteristic. And here, it's landowners targeted by drug cartels. That's not what we said. Landownership. Referring to Acosta's examples of former military leadership or landownership. The BIA called them easily recognizable traits. Landownership by itself. Yes. Right. And here. And here, he's eliminated because he's a wealthy landowner. Well, no, that's not correct. He's a landowner targeted by drug cartels. No, you don't need that as a definition of landownership. We said that Acosta's examples of former military leadership or landownership. The BIA called them easily recognizable traits. Right. They didn't say landownership with people who don't like landowners. You're right, Your Honors. That's exactly the point. You don't need that. It's landownership that is a socially visible and identifiable group. Well, but that's because that was the group proposed there, Judge Reinhart. And here, you are talking about a different group. It's not just landowners. It's landowners targeted. He said not only is he a landowner, he's a wealthy landowner. And they're less popular than other landowners. But it doesn't mean that you're not somebody who's in the group. You happen to be, in addition to being in the group, wealthy. Well, you get into troublesome territory there, Your Honor, because the board has specifically said that wealth is too amorphous a benchmark to do that. Yes, wealth is, but not a landowner who is identifiable, but he also says he's wealthy, which makes him more attractive to the groups that hate landowners. Your Honor, we still believe that read together, it's not a cognizable social group. And if I can turn to social visibility for a second, that might help the analysis, because this group falls directly under a class of social groups that this Court and the board has already recognized as not socially visible. That's the matter of SEG and in this Court's decision in Ramos-Lopez, and most recently in Enriquez-Rivas, in that en banc decision. The Court and the board has consistently held that generalized opposition to or resistance to or being targeted by gangs or drug cartels is simply not enough to lend yourself to be socially visible when you're in a country where the violence is kind of so pervasive. Well, don't we have to let the BIA determine that in the first instance? I mean, based on Enriquez-Rivas? What's your position? It sounds like you're distinguishing Enriquez-Rivas, but do you acknowledge that it did open the question up regarding social visibility? Well, no, Your Honors. This is the impact of Enriquez-Rivas here. That case very specifically talked about a group who is testifying against gangs, and the Court actually distinguished that group from the prior line of precedent from both the board and this Court in those cases which were just generalized opposition or groups targeted in general. So Enriquez-Rivas supports the government's argument there because that group was distinguished and that panel, that en banc panel, said as much. Now, more generally, the impact of Enriquez-Rivas here, it focused largely on social visibility. As my colleague pointed out with regard to particularity, it only overturned cases that cited the diversity of lifestyles, interests, political leanings in the context of the particularity analysis because Enriquez-Rivas said that that analysis more properly applies to social visibility. Now, here, the board did cite Cervasco-Valentes, but again, this case is directly controlled by Ochoa v. Gonzalez, which has a nearly identical social group, which is Colombian business owners targeted by or who refuse to participate in drug trafficking. The Court already said in Ochoa v. Gonzalez that that group was not sufficiently particular. Now, and again, turning back to social visibility, it's helpful, Your Honors, to look at the arguments the petitioner made, which is to say not a single authority in any court and only cited evidence that's not in this record, which is simply an article suggesting that drug cartels in Mexico have started to target avocado barons, which is certainly not relevant to this case and certainly doesn't compel the conclusion that his group is socially visible. Now, very briefly, if I could turn to cat protection at the end here, Your Honors, the harm the petitioner alleges here is regrettable and significant to be sure, but harm is just one component of the cat analysis. Acquiescence is the other. The petitioner himself did not allege that harm here was inflicted or that he would face harm in the future, torture in particular, by the government. What he alleges is that the government might play a role in it, and that's the acquiescence analysis. Now, to satisfy acquiescence, the regulations require that a government official be aware of and subsequently fail to intervene to prevent activity constituting torture. Now, Judge Zuhari, as you already noted, here at the very best you have police officers who are perhaps complicit in this drug cartel's activity. There is nothing in the record to suggest these police officers even knew the petitioner was in the automobile, let alone that he was a captive, let alone that he was mistreated, and all of those things are obstacles to demonstrating acquiescence. The fact that the police may have been complicit here may more properly be considered as part of an asylum, unable or unwilling to protect analysis, but it's far from what petitioner needs to demonstrate for acquiescence. Very briefly, Your Honors, if there's no further questions, I'd like to point out again. I have one question. Yes. You have described plaintiff's description of the particular social group as landowners targeted by drug cartels, but the petitioner has argued, and most recently in his supplemental letter, made it one, that his proposed social group is wealthy landowners in Mexico. What about that latter description? Why does that not satisfy a particular social group, especially in light of Henrica's grievance? Well, first, Your Honors, I would say that that's not the group that he proposed to the agency. So if this Court would allow petitioner to all of a sudden change his particular social group claim, then they could send it back to the Board for an issue that was never exhausted in the first place. Now, if, again, the Court wanted to examine that claim, it's what is the claim exactly, Your Honor? It's wealthy landowners in Mexico. Wealthy landowners. Not just landowners, not wealth, but put the two together and you've got a group that's working there. Wealthy landowners in Mexico. Well, again, we'd suggest, first of all, for the particularity analysis, wealth has already been dismissed. Again, though, Judge Reinhart, they need to be read together. So wealthy landowners in Mexico. I wouldn't say wealth has been dismissed. What you mean is that the Board has said that wealth alone is not enough. That's correct, Your Honor. Well, nobody's saying that wealth alone is enough in this case. No, Your Honors, but I'm — So what's the point of that? Your Honors, the point is that oftentimes with these social groups, it's not as if the Court or the Board has addressed all of the characteristics together at once. In this case, the Board has already addressed wealth. In the same way that you suggest that land ownership under board and court analysis is relevant here, even though that's not the sole criterion of this social group, it is relevant how the Board and the Court have addressed social groups with some of the characteristics here. And wealth, as the Board has said, in order to — All right. So the Board has said wealth alone is not enough. And this case doesn't involve wealth alone. Well, it involves, according to the group that Petitioner now appears to be proposing, wealthy landowners — Whatever group. No group has said wealth alone is enough. So I don't know why you persist in telling us that wealth is no good. It doesn't matter. Wealth alone is what they said is not a group. Right. Okay. Well, that's not involved in this case. Well, Your Honor, I believe you're making the point I was making before about land ownership. I hope not. Which is in isolation, it can't be viewed as satisfying social — I said it. I said that the Board has said that land ownership alone is enough. And the Board has said that wealth alone is not enough. Land ownership alone may be enough. But when you add characteristics that might make the group more amorphous, it would no longer be. And wealth makes it more amorphous, not less amorphous? Wealth certainly makes it more amorphous, Your Honors. That's exactly what the Board said in that argument. All right. So land ownership is less amorphous, and you make it more amorphous by limiting the group to wealthy landowners. No, exactly, Your Honors. Okay. All right. I understand the argument. When you add a characteristic that cannot be defined, even to a group that already was delimitable, it absolutely makes it less likely to be particular. There are no further questions, Your Honor. We ask that this Court deny the petition for review. Thank you. Thank you, Your Honor, for giving me a minute to respond to the government. First of all, Your Honor, the government keeps citing the matter of SEG and these gang-related cases. They are not relevant to this case at all. I mean, they were generalized opposition to gangs or generalized resistance to gangs. They are not relevant to this case. And Enrique Rivas, contrary to what the government says, does not support their position. I mean, the BIA in this case specifically cited the Court's case in Valesco-Cervantes, which says that the landowners can come from all walks of life, all lifestyles. That's not even relevant. Enrique Rivas said that that is irrelevant inquiry for the particularity purposes. Land ownership, as Judge Reinhart pointed out, correctly makes this group well-defined and particularized. And finally, Your Honor, the Seventh Circuit has specifically held that landowners in Colombia or cattle ranchers are members of a social group. So this group that the Respondent proposes has support in other circuits. Thank you, Your Honor. I think my time is up. Thank you. Case to charge, it will be submitted.
judges: Zouhary, Reinhardt, Murguia